UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____1:22-mj-02937 Damian_____

UNITED STATES OF AMERICA
v

OSVALDO PEREZ MORALES
and LU SUN,
        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: *Jonathan D. Stratton*
Jonathan D. Stratton
Assistant United States Attorney
FL Bar No.       93075
99 N.E. 4th Street
Miami, Florida 33132
Tel: 305-961-9151
Email: jonathan.stratton@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 1:22-mj-02937 Damian |
| OSVALDO PEREZ MORALES and LU SUN, | ) |
|  | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 2019 through May 2022__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028(a)(1) and (f) | Conspiracy to Produce Identification Documents Without Lawful Authority |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel Jared Nobles, Jr., FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by WhatsApp.

Date: 6/2/2022 at 5:11pm

_____
*Judge's signature*

City and state: Miami, Florida

Honorable Melissa Damian, U.S. Magistrate Judge
*Printed name and title*

## SEALED AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Jared Nobles, Jr., being first duly sworn, hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (the "FBI") currently assigned to the Counterintelligence Division of the FBI's Miami Division, and have served as an FBI Special Agent since January 2020. My duties involve investigating violations of federal law, including investigating the procurement of false identification documents and various conspiracies to violate federal criminal statutes. Prior to becoming a Special Agent, I worked as a civil litigation attorney for approximately three years.

2. I make this Affidavit in support of a criminal complaint against Osvaldo Perez Morales ("PEREZ") and Lu Sun ("SUN"). As set forth below, there is probable cause to believe that, from as early as June 2019, through May 2022, in the Southern District of Florida and elsewhere, PEREZ and SUN knowingly conspired with persons known and unknown to produce identification documents without lawful authority, in violation of 18 U.S.C. § 1028(a)(1) and (f). Specifically, your Affiant believes that PEREZ and SUN create, maintain, and provide fraudulent proof of residency documents that allow out-of-state applicants to falsely claim physical residence in the State of Florida to obtain Florida Driver's Licenses ("DLs") without lawful authority.

3. I submit this Affidavit based on my personal knowledge as well as information provided to me by other law enforcement officers and my review of records and other evidence obtained during this investigation. I have participated in this investigation along with other FBI Special Agents, Investigators from the Florida Highway Patrol ("FHP"), and investigators from other investigative agencies. I am familiar with the facts and circumstances described in this Affidavit. Because this Affidavit is being submitted for the limited purpose of establishing that PEREZ and SUN have engaged in the crime enumerated above, I have not included every fact

known to me concerning this investigation. Rather, I have set forth only those facts which I believe are necessary to establish probable cause to obtain a criminal complaint.

## PROBABLE CAUSE

### I. Background on PEREZ, SUN, and the Sunny Road Driving School

#### A. PEREZ and SUN

4. PEREZ is a Cuban-born naturalized United States citizen. PEREZ is married to SUN, who is a naturalized United States citizen originally born in the People's Republic of China (the "PRC" or "China").

5. As best the FBI can determine from data maintained by the United States Government, PEREZ and SUN arrived together in the United States from the PRC on or about May 30, 2011, after both PEREZ and SUN processed their initial visa applications in the PRC.

#### B. Sunny Road Driving School

6. On March 13, 2017, PEREZ incorporated "Sunny Road Traffic LLC" with the Florida Secretary of State. Sunny Road Traffic LLC does business as "Sunny Road Driving School" ("SUNNY ROAD"). The most recent annual report filed for SUNNY ROAD with the Florida Secretary State, filed on March 3, 2022, lists PEREZ and SUN as "Managers".

7. SUNNY ROAD advertises itself as a provider of a comprehensive list of driving services to potential clients. For instance, SUNNY ROAD's Facebook pages states that "Sunny Road Driving School has been the go to place for parents and students of driving for safe driving for years! Our system is designed to adjust to each individual's needs and areas of concern focusing on defensive driving and skill development."

## II. The Scheme to Obtain Florida Driver's Licenses for SUNNY ROAD Clients through Fraudulent Means

8. The FBI and FHP have discovered evidence that PEREZ, SUN, and potentially others are actively using SUNNY ROAD in a scheme to assist SUNNY ROAD clients in obtaining Florida DLs through fraudulent means. As more fully described below, FBI's Miami Division first learned of this scheme through an interview of a witness whose statements were subsequently corroborated.

### A. WITNESS 1 Utilizes SUNNY ROAD's Services to Obtain a Florida Driver's License for WITNESS 2

9. WITNESS 1 and WITNESS 2 reside outside the State of Florida. WITNESS 2 is WITNESS 1's father-in-law and is an ethnic Chinese male who immigrated to the United States. WITNESS 2 cannot speak or read English, and because of his language deficiency, WITNESS 2 failed various attempts to obtain a DL from another state.

10. As a result of WITNESS 2's difficulty obtaining a DL, WITNESS 1 began searching for ways to obtain an out-of-state license for WITNESS 2. WITNESS 1 learned through an online forum that SUNNY ROAD assisted people to obtain "illegal driver's licenses." Thereafter, upon further inquiries, WITNESS 1 was told that he would have to drive to SUNNY ROAD's location in Davie, Florida to obtain an illegal DL.

11. In late 2020, WITNESS 1 began communicating with a female named "Lulu", subsequently identified as SUN, from SUNNY ROAD. SUN told WITNESS 1 that she and SUNNY ROAD could assist WITNESS 2 obtain an illegal Florida DL. SUN stated that all WITNESS 2 would need for documentation was a "green card," but that SUNNY ROAD charged $800 for the service of securing a DL for WITNESS 2.

12. In September 2020, WITNESS 1 drove WITNESS 2 to Florida to meet SUNNY ROAD staff. There, WITNESS 1 and WITNESS 2 met SUN and a male identified as "Lulu's

3

husband", who was subsequently identified as PEREZ. Eventually, at the direction of SUN, WITNESS 1 drove WITNESS 2 to a Florida FLHSMV Driver's License office located at in Miami, Florida (the "Miami DL Office"). After arriving, SUN ushered WITNESS 2 through various portions of the Florida DL testing process.

13. First, WITNESS 2 took the computer-administered written examination on traffic maneuvers and road signage. SUN explained to WITNESS 2 that he should guess on each question and that someone would "take the rest of the test" for him once WITNESS 2 missed 18 questions. Because WITNESS 2 could not speak or read English, WITNESS 2 quickly missed 18 questions. At that point, a male walked over and verbally told WITNESS 2 the answers to the rest of the test. Following the written examination, WITNESS 2 then took the driving portion of the DL exam, which WITNESS 2 passed.

14. After finishing both exams, PEREZ escorted WITNESS 2 to the front of the waiting line, passing others, and assisted WITNESS 2 with the paperwork to obtain a Florida DL. At the conclusion, WITNESS 2 obtained a valid Florida DL—albeit through fraudulent means.

15. WITNESS 1 paid SUN $800 cash for assisting WITNESS 2 to obtain the Florida DL. Following the receipt of payment, SUN told WITNESS 1 that if WITNESS 1 referred additional clients to SUNNY ROAD for illegal DL services, SUN would give WITNESS 1 a "cut" of any fees that SUNNY ROAD received. Specifically, SUN stated that she would charge WITNESS 1's recruits $1,300 for an illegal DL, of which, Lulu would pay WITNESS 1 a $500 finder's fee.

16. FBI Agents and FHP Investigators have reviewed DAVID[1] records and confirmed that WITNESS 2 obtained a Florida DL on September 3, 2020, consistent with the information provided by WITNESS 1 and WITNESS 2.

---

[1] "DAVID" stands for "Driver and Vehicle Information Database." DAVID maintains a comprehensive database of information for persons who obtain Florida driver's licenses, learner's permits, and identification cards. Among other items, DAVID contains photos of individuals who obtain Florida identification documents and also contains scanned

4

B. Fraudulent Proof of Residency Documents

17. Florida law requires that individuals obtaining a DL submit proof of residency documents to establish that the individuals maintain a physical residential address in the State of Florida. A review of the proof of residency documents submitted to obtain WITNESS 2's DL show apparent information from a Macy's credit card and Bank of America statement that list a Dania Beach, Florida address. After reviewing these proof of residency documents, FHP Investigators observed that the scans of the documents appear "cut off" and truncated, which is against FLHSMV policy and practice that require a full scan of proof of residency and other supporting documents.

18. In addition, WITNESS 1 and WITNESS 2 have confirmed that WITNESS 2 did not live in Florida at the time he obtained the Florida DL in September 2020. In fact, FHP Investigators confirmed that WITNESS 2 surrendered his Florida DL to his home state seven days after obtaining the Florida DL, which allowed his home state to issue a new DL without requiring WITNESS 2 to take a written or practical driving test (which he would have not been able to complete given WITNESS 2's language deficiency).

19. Finally, FBI Agents and FHP Investigators detected in DAVID records that a second PRC-born male ("CUSTOMER 1") applied for and obtained a Florida DL on September 1, 2020—two days before WITNESS 2—and submitted identical Macy's and Bank of America proof of residency documents with the same Dania Beach, Florida address. Among other documents, CUSTOMER 1 submitted a traffic school confirmation certificate to obtain his Florida DL. The certificate listed "Suny [sic] Road Driving School" as the traffic school provider.

---

copies of documents submitted to obtain those identification documents. Examples of scanned documents maintained in DAVID include proof of residency documents and records of driving examinations. FLHSMV provides DAVID access to various law enforcement agencies.

5

20. Given the information provided by WITNESS 1 and WITNESS 2 and the documentary evidence from DAVID records, there is probable cause to believe that SUNNY ROAD assisted WITNESS 2 and CUSTOMER 1 to obtain a Florida DL by providing false proof of residency documents that fraudulently allowed out-of-state persons to obtain Florida DLs.

C. **WITNESS 3 Utilizes SUNNY ROAD's Services to Obtain a Florida Driver's License During a Covert Law Enforcement Operation**

21. WITNESS 3 resides outside the State of Florida and therefore cannot meet the legal requirements for obtaining a Florida DL. During May 2022, WITNESS 3 communicated with both PEREZ and SUN to engage SUNNY ROAD's services to obtain a Florida DL.

22. That same month, WITNESS 3, as instructed by PEREZ and SUN, met both PEREZ and SUN at the Miami DL Office. During that meeting, PEREZ and SUN ushered WITNESS 3 through various portions of the DL acquisition process, including waiting with WITNESS 3 in various lines at the Miami DL Office, assisting WITNESS 3 with required forms, and providing a vehicle for WITNESS 3 to take the practical driving course.

23. At the direction of the FBI and FHP, WITNESS 3 wore an audio recording device during the entire interaction with SUN and PEREZ while at the Miami DL Office, which captured both SUN and PEREZ speaking with WITNESS 3 about the DL acquisition process, the schedule for obtaining WITNESS 3's Florida DL, and the content of various other communications.

24. In addition, FBI Agents and FHP Investigators performed covert physical surveillance at the Miami DL Office during the time when WITNESS 3 interacted with SUN and PEREZ. Through this surveillance, FBI Agents and FHP Investigators captured numerous photographs of SUN and PEREZ guiding WITNESS 3 and others through the Florida DL acquisition process.

25. While at the Miami DL Office, SUN provided WITNESS 3 with a fraudulent Bank of America account statement (the "BofA Statement") for WITNESS 3's use as required proof of residency for the Florida DL.

26. The BofA Statement listed an address in South Florida (the "South Florida Address") but did not reference WITNESS 3's name. Instead, the BofA Statement listed the names of two other persons—CUSTOMER 2 and CUSTOMER 3.

27. Before WITNESS 3 obtained the Florida DL, SUN provided WITNESS 3 with a second document entitled "Certification of Address." FHSMV provides this form so that individuals can prove residency in Florida without having a piece of letter mail or other address document by appearing with a roommate or occupant of a residence who does have such documentation.

28. To support WITNESS 3's claim to Florida residency at the South Florida Address, SUN listed the name of CUSTOMER 2 on the Certification of Address form as "an individual who provides acceptable documents establishing proof of residential address" for WITNESS 3. SUN then fraudulently signed the name of CUSTOMER 2 on the Certification of Address form. After SUN provided WITNESS 3 with the Certification of Address form, WITNESS 3 provided both the Certification of Address form and the BoA Statement to FHSMV, which purported to establish that WITNESS 3 lived with CUSTOMER 2 at the South Florida Address. However, WITNESS 3 did not and has never lived in the State of Florida.

29. When WITNESS 3 took the practical driving exam, PEREZ provided use of a vehicle, which WITNESS 3 drove during the driving exam. FBI Agents and FHP Investigators captured photographs of WITNESS 3's use of the vehicle for the driving exam.

30. WITNESS 3 eventually obtained a Florida DL without lawful authority after submitting the fraudulent proof of residency documentation provided to WITNESS 3 by SUN.

WITNESS 3 paid PEREZ for the services provided by SUN and PEREZ on behalf of SUNNY ROAD. PEREZ and SUN allowed WITNESS 3 to keep the fraudulent proof of residency documents, which are in law enforcement's possession.

31. Following a review of the proof of residency documents provided to WITNESS 3 by SUN, FBI Agents and FHP Investigators determined that CUSTOMER 2 and CUSTOMER 3 obtained Florida DLs days before WITNESS 3. Like WITNESS 3, CUSTOMER 2 and CUSTOMER 3 submitted what appears to be copies of the same BofA Statement as proof of residency listing the South Florida Address as their residence in Florida.

32. FBI Agents interviewed one of the property owners of the real property located at the South Florida Address (the "Property Owner"). The Property Owner confirmed that the Property Owner and the Property Owner's spouse have exclusively lived at the South Florida Address for around two years. Other than the Property Owner's two children—who do not match the ages, race, or descriptions of WITNESS 3, CUSTOMER 2, and CUSTOMER 3—the Property Owner has never allowed anyone to reside at the South Florida Address as a roommate, renter, resident, or otherwise.

D. Documentary Evidence that SUNNY ROAD, PEREZ, and LU have Assisted Others to Fraudulently Obtain Florida Driver's Licenses

33. After reviewing the information from WITNESSES 1, 2, and 3, FBI Agents and FHP Investigators began reviewing all records of persons who SUNNY ROAD may have sponsored to obtain a Florida DL at the Miami DL Office.

34. In addition to the DAVID database, FHP maintains a database of all persons who take the required examinations to obtain a Florida DL. Among other things, the database captures the license tag of the vehicle used for the licensee's practical driving exam. Based on a review of this

8

database, SUNNY ROAD has, at various times, used three vehicles registered to SUNNY ROAD with the FLHSMV to sponsor clients for Florida DL examinations at the Miami DL Office.

35. By reviewing those persons who have used the three SUNNY ROAD vehicles for driving tests at the Miami DL Office, law enforcement has identified a list of approximately 179 individuals, from August 3, 2018 through May 2022, for which SUNNY ROAD, PEREZ, and/or SUN have provided fraudulent proof of residency documents to support fraudulently obtaining a Florida DL.

36. A review of the proof of residency documentation for the 179 person list reveals significant indicators of fraud. As an example, DAVID records reflect that 46 persons, not including PEREZ and SUN, listed PEREZ and SUN's current residence as their residential address. Specifically, one licensee listed SUN and PEREZ's residence as his/her address as early as June 10, 2019. Further, many of the people identified in the list submitted nominal identification documents (such as a learner's permit or a state-issued identification card) from other states to FLHSMV, indicating that these persons may reside outside the State of Florida.

37. In addition, for those that submitted Macy's and Bank of America envelopes for their proof of residency documentation, the envelopes almost always appear to be "cut off," which is against policy and unordinary. In most cases, the addresses and names on the Macy's and Bank of America envelops appear grainy and out of focus, which suggests that PEREZ, SUN, or others acting at their direction and control have used a .pdf or other editing device to alter names and addresses on the envelops or duplicates of the envelopes.

## CONCLUSION

38. Based upon the foregoing, your Affiant submits that there is probable cause to believe that PEREZ and SUN conspired with persons known and unknown to produce identification

documents, specifically Florida DLs, without lawful authority, in violation of Title 18, United States Code, Section 1028(a)(1) and (f).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
Daniel Jared Nobles, Jr., Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by WhatsApp, this 2nd of June 2022 at 5:11pm

_____
HONORABLE MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE